EVERETT ROBINSON *vs.* INHABITANTS OF WAREHAM.

A member of the committee chosen by the towns of Plymouth and Wareham, pursuant to *St.* 1838, *c.* 19, to regulate the fishery in Agawam and Halfway Pond Rivers, may recover for the services performed by him under that act, in an action against the town by which he was chosen, if that town has received, from the proceeds of the fishery, a sum sufficient to pay him, without joining the other town as a defendant.

The committee chosen by the towns of Plymouth and Wareham, pursuant to *St.* 1838, *c.* 19, to regulate the fishery in the Agawam and Halfway Pond Rivers, are not required by that statute to watch and inspect the rivers, and cannot recover of the towns for such services, although necessary to prevent a violation of the statute; nor for travelling expenses incurred in making a complaint before a magistrate for an assault on one of the committee while engaged in such services.

ACTION OF CONTRACT, brought by the assignee of Benjamin Harlow, an insolvent debtor, upon the following account, annexed to the writ:

| | | "1852.                  Town of Wareham to Benj. Harlow,                 Dr. | |
|---|---|---|---|
| (1) | March 8th. | One day's service, to meet the Plymouth herring committee, . . . . . . . | $1.25 |
| (2) | " 27th. | One half day's service with committee at the Green, . . . . . . , . | 62⅓ |
| (3) | " " | One half day to sell the privilege, . . . . | 62½ |
| (4) | June 1st. | Twenty two days' watching and inspecting the Agawam and Halfway Pond Herring Rivers, . | 27.50 |
| (5) | " | Cash paid for horse and carriage to Plymouth, on the business of the town, . . . . | 3.00 |
| | | | $33.00 " |

At the trial in the court of common pleas, before *Sanger*, J. the plaintiff gave in evidence " An act to regulate the fishery in the Agawam and Halfway Pond Rivers," (*St.* 1838, *c.* 19,) the first section of which requires that " the towns of Plymouth and Wareham shall annually, at their meetings in the month of November, respectively choose by ballot a committee of not more than three persons each, who shall be sworn to the faithful discharge of their duties, in the manner of other town officers; which committee shall, in the month of March, annually, after a public notice of at least ten days, sell by public vendue the privilege of taking the fish called alewives and shad, in the

Agawam and Halfway Pond Rivers." That act also authorizes the committees to regulate the time and manner of fishing, and to remove obstructions to the passage of the fish; and provides that the proceeds of the fishery shall be equally divided between said towns; and that the committees "shall receive, out of the proceeds of said fishery, one dollar and twenty five cents each, for every day's service they may be actually engaged in performing the duties herein required of them."

-It was admitted that Harlow had been duly chosen by the town of Wareham, and sworn, as one of said committee; and that the towns of Plymouth and Wareham had each received, from the proceeds of the fishery for 1852, more than enough to pay for the services and charges of the whole committee. The defendants contended, in their answer, and at the trial, that this action could not be sustained, by reason of the non-joinder of the inhabitants of Plymouth as defendants. But the judge ruled otherwise.

The plaintiff offered evidence tending to show that the services, charged in the fourth item of the account, for watching and inspecting the rivers, were actually performed. The defendants objected, on the ground that these services were not within the duties required by the statute. But the judge admitted the evidence, and instructed the jury that if they believed the services were rendered, and were necessary or proper to prevent violation of the statute, they might find this item for the plaintiff.

In support of the fifth item, the plaintiff, against the objection of the defendant, was allowed to introduce evidence tending to show that "Harlow, while in the discharge of his duty as an inspector, was assaulted, and that an attempt was made to throw him into the river; that he consulted the other members of the committee, and that they considered it necessary that criminal proceedings should be instituted against the offenders; that the magistrate, before whom the complaint was to be made, was then in Plymouth, attending court, and that this item was for cash paid for carriage hire, in going to Plymouth to make the complaint." And the judge instructed the jury, " that if they were satisfied

that the course pursued by Harlow was necessary or proper to enable him to discharge properly the duties required of him by the statute, and that it was necessary that he should go to Plymouth and make the complaint, and that the charge was a proper charge, then they could find that item for the plaintiff, as in that case it would be an expenditure properly incurred in the discharge of his duties under the statute, and properly charge able to the town."

The jury returned a verdict for the plaintiff for the whole amount claimed, and the defendants alleged exceptions.

*S. Miller, Jr.* for the defendants.

*E. Robinson,* for the plaintiff.

MERRICK, J.   We perceive no valid objection to the right of the plaintiff to maintain his action for the first three items in the account.   The objection to the maintenance of the action, because of the non-joinder of the town of Plymouth, is in the nature of a plea in abatement, upon which the decision of the court of common pleas would seem to be final.   *Browning* v. *Bancroft,* 5 Met. 88.

But without placing our decision upon that ground, we think the action may well be maintained, for those services of Harlow for which the plaintiff is entitled to recover, against the defendants alone.   The members of the committee are entitled to recover compensation for their services out of the proceeds of the sale of the fisheries.   These proceeds, it is agreed, have been divided, and each of the two towns has received an equal part, and a part sufficient to pay for all the services which have been rendered in discharge of the duties enjoined by the statute.   If, therefore, the plaintiff recovers of the defendants alone, he will still receive his compensation from the fund which is specifically appropriated by law for such payment.

It is not pretended that the services and expenses charged in the account were rendered or incurred under any contract between Harlow and the town.   This action is founded wholly on the provisions of *St.* 1838, *c.* 19.   It is to be observed that the statute does not give, or entitle the members of the committee to receive compensation, except for their services while they are

27 *

actually engaged in the performance of the duties which it expressly requires of them. And upon a careful examination of all its provisions, it nowhere appears that they are enjoined to watch or inspect the rivers, or to spend their time, or adopt any measures whatever, in anticipation of or to prevent a violation or infringement of the statute. And therefore, though the watching and inspection of the rivers by members of the committee might have been well adapted, and even necessary, to prevent a violation of some one or more of the provisions of the statute, the rendition of such a service could not entitle the plaintiff to recover compensation for it against the municipal corporations which had an interest in the fishery; because the service was not specified or enjoined as a duty, and no provision whatever was made, in case it should be rendered, for its compensation.

The remaining item in the account is, in terms, " Cash paid for horse and carriage to Plymouth, on the business of the town." But it appears, from the facts reported in the bill of exceptions, that this expense was not incurred in promoting, or in reference to, any business of the town; but in order to make a complaint to a magistrate against some individual who had made an assault upon the person of Harlow. This could in no sense be regarded as a service rendered, or an expense incurred, in the discharge of his official duties. As far as the assault is to be considered an injury to him, the seeking of a remedy for it was a matter purely personal to himself; and considered as a public offence or breach of the peace, it was undoubtedly a proper subject for complaint or prosecution. But in either case the expense incurred in pursuit of the object could not possibly lay any foundation for a charge against the town, which was under no responsibility in reference to it, either by reason of any obligation imposed upon it by the legislature, or of any engagement which it had voluntarily contracted. *Exceptions sustained.*